IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| **TINA NASH,** | * | |
| Plaintiff, | * | |
| v. | * | Case No.: GJH-20-1138 |
| **MONTGOMERY COUNTY, MARYLAND,** *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Tina Nash brings this civil action against Defendants Montgomery County, Maryland and Linda Herman, alleging violations of her Fifth, Tenth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, violations of Articles 19, 24, and 46 of the Maryland Declaration of Rights, and state causes of action for intentional infliction of emotional distress and conversion. ECF No. 1-3; ECF No. 7. Pending before the Court is Defendants' Partial Motion to Dismiss. ECF No. 14. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendants' Partial Motion to Dismiss is granted.

**I.    BACKGROUND[1]**

On February 4, 1999, Defendant Montgomery County, Maryland ("Defendant County") submitted an administrative application requesting that Plaintiff Tina Nash be retired on service-connected disability from Montgomery County Fire and Rescue due to a work-related injury.

---

[1] Unless stated otherwise, all facts are taken from Plaintiff's Complaint or documents attached to and relied upon in the Complaint and are accepted as true. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

1

ECF No. 7 ¶ 16; ECF No. 7-1 at 5.[2] On June 6, 1999, Plaintiff met with a retirement specialist for Defendant County and executed the requisite documents to effectuate her retired with a service-connected disability status as of July 5, 1998, her last day of work. ECF No. 7 ¶ 17; ECF No. 7-1 at 6–7.

In 2012, Defendant County requested that Plaintiff submit to a recertification of her continued service-connected disability because August 1, 2012 would have been her "normal retirement date." ECF No. 7 ¶ 18; *see* Montgomery County Code § 33-38(a) (defining "normal retirement date"). Plaintiff complied, and on December 18, 2012, the Disability Review Panel found her eligible for continued service-connected disability retirement benefits. ECF No. 7 ¶ 19; ECF No. 7-1 at 8.

On October 28, 2015, Plaintiff's mother, Trudy Sasscer, passed away. ECF No. 7 ¶ 20. Prior to her death, Ms. Sasscer had received survivor pension benefits for her deceased husband, who had been a firefighter, through Defendant County's Montgomery County Employee Retirement Plans ("MCERP"). *Id.* Based on a letter from then-MCERP Senior Retirement Analyst Robert Goff attached to the Complaint, MCERP believed that a payment of $3,487.89 was improperly deposited to Ms. Sasscer's account on November 1, 2015. ECF No. 7-1 at 11. In or around the time-frame of December 2015 and January 2016, Plaintiff had about four telephone conversations with Defendant Linda Herman, MCERP's Executive Director, concerning the "perceived one (1) month overpayment." ECF No. 7 ¶ 21. During one of these calls, Plaintiff told Defendant Herman that "it was an estate issue and that she was not personally responsible for any repayment." *Id.* ¶ 22. According to Plaintiff, Defendant Herman responded, "I will get the money one way or another." *Id.*

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

On February 29, 2016, Defendant Herman sent Plaintiff a certified letter requesting that she submit medical information for a determination of her continued eligibility for service-connected disability benefits. ECF No. 7 ¶ 23; ECF No. 7-1 at 9–10. She stated that failure to comply could result in the discontinuation of those benefits. ECF No. 7 ¶ 23; ECF No. 7-1 at 10. Plaintiff alleges that a similarly situated male member retired on service-connected disability benefits did not receive a similar letter. ECF No. 7 ¶ 24. Plaintiff complied with the request on March 11, 2016. *Id.* ¶ 25.

According to Plaintiff, Defendant Herman then directed Mr. Goff to send Plaintiff a letter threatening litigation if she did not repay the $3,487.89 deposited to her mother's account on November 1, 2015. *Id.* ¶ 26; ECF No. 7-1 at 11. He sent the letter on April 5, 2016, copying Defendant Herman. ECF No. 7-1 at 11.

Nearly a year later, on February 7, 2017, Mr. Goff—now MCERP's Retirement Benefits Manager—sent Plaintiff a letter requesting a copy of her 2015 federal tax return to determine her continued eligibility for benefits pursuant to Montgomery County Code § 33-43. ECF No. 7 ¶ 27; ECF No. 7-1 at 12–14. As before, the letter threatened discontinuation of her benefits if she did not comply. ECF No. 7 ¶ 27; ECF No. 7-1 at 14. Immediately after receiving the letter, on or about the second week of February 2017, Plaintiff had a conversation with Mr. Goff by telephone in which she explained that her "normal retirement date"—August 1, 2012, ECF No. 7 ¶ 18; ECF No. 7-1 at 17—had passed, and therefore § 33-43 no longer applied to her. ECF No. 7 ¶ 28. Mr. Goff reiterated that he was required to procure the federal tax returns from Plaintiff and that if she refused to comply, her benefits would be discontinued. *Id.* ¶ 29. Plaintiff complied on February 22, 2017. *Id.* ¶ 30. According to Plaintiff, a similarly situated male member with a normal retirement date within a year of Plaintiff's received a similar income verification letter

requesting his tax returns, and he refused to comply, but he suffered no negative consequences or reduction in benefits. *Id.* ¶ 44.

On July 13, 2017, MCERP Disability Manager Chrissy Mireles notified Plaintiff that she was scheduled for an Independent Medical Evaluation ("IME") with an orthopedist. *Id.* ¶ 31; ECF No. 7-1 at 15. Plaintiff again disputed that such a request complied with § 33-43, but nevertheless complied on July 27, 2017. ECF No. 7 ¶ 32. Ms. Mireles received the IME, which confirmed Plaintiff's continued permanent disability, on August 14, 2017. *Id.* ¶ 33.

According to Plaintiff, after receiving the IME finding, Defendant Herman and Defendant County "realiz[ed] that this would not be a potential avenue to attempt to discontinue and/or reduce" Plaintiff's benefits, *id.* ¶ 34, and changed course. Two days later, on August 16, 2017, Defendant Herman sent Plaintiff a letter stating that, due to the annual income earnings test, conducted based on the federal tax return provided in February 2017, Defendant County would reduce her benefits from $2,979.07 to $2,486.15 per month beginning September 1, 2017, a difference of $492.92 per month. *Id.*; ECF No. 7-1 at 16. The Debt Income Verification accompanying the letter also contained an incorrect "normal retirement date"—May 1, 2021, ECF No. 7 ¶ 36, instead of August 1, 2012, *id.* ¶ 18; ECF No. 7-1 at 17.[3] Plaintiff alleges the reduction in benefits was unlawful under Montgomery County Code § 33-43(j)(7), which provides that an individual in Group G—of which Plaintiff is a member—may not have their benefits reduced except in two situations inapplicable to Plaintiff. ECF No. 7 ¶¶ 38–39. Plaintiff further alleges that after her normal retirement date, the annual income earnings test does not apply to her. *See id.* ¶ 41.

---

[3] Plaintiff further alleges that Mr. Goff used an incorrect normal retirement date in a letter sent on March 16, 2017. ECF No. 7 ¶ 40.

4

After receiving the letter, Plaintiff contacted Mr. Goff via telephone about the reduction in benefits. *Id.* ¶ 35. He advised her to get legal representation because she had been the only service-connected disabled firefighter to have her benefits reduced. *Id.*

Plaintiff appealed the reduction in benefits to the Chief Administrative Officer of the Office of the County Executive, Timothy Firestine, and then to the Merit System Protection Board. *Id.* ¶ 12. On August 2, 2018, Mr. Firestine granted Plaintiff's request that Defendant County cease the reduction in her benefits effective September 1, 2018, and refund the withheld funds, *id.*, which totaled $5,915.04, *id.* ¶ 45.

Plaintiff filed suit in the Circuit Court for Montgomery County on February 13, 2020. *See* ECF No. 1-17 at 20, 31. Plaintiff brought a "class-of-one" claim under 42 U.S.C. § 1983 against Defendants County and Herman (Count I), a *Monell* claim under 42 U.S.C. § 1983 against Defendant County (Count II), a sex discrimination claim against Defendants County and Herman, also under 42 U.S.C. § 1983 (Count III), a 42 U.S.C. § 1985 conspiracy claim against Defendant Herman (Count IV), claims for violations of Articles 19, 24, and 46 of the Maryland Declaration of Rights against both defendants (Count V), and state claims of intentional infliction of emotional distress (Count VI) and trover and conversion (Count VII) against both defendants. *See* ECF No. 1-3; ECF No. 7. Defendants removed the action to this Court on May 4, 2020. ECF No. 1. On August 3, 2020, Defendants filed a Partial Motion to Dismiss seeking dismissal of the 5th Amendment claims raised under Counts I-IV, the "class of one" claim under Count I, as well as counts IV, VI and VII. ECF No. 14. Plaintiff opposed the motion on August 14, 2020, ECF No. 15, and Defendants filed a reply in support of their motion on August 28, 2020, ECF No. 16.

5

## II.     STANDARD OF REVIEW

Defendants move to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 14-1 at 1–2. A motion to dismiss under 12(b)(6) "test[s] the adequacy of a complaint." *Prelich v. Med. Res., Inc.*, 813 F. Supp. 2d 654, 660 (D. Md. 2011) (citing *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008)). Motions to dismiss for failure to state a claim do "not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Prelich*, 813 F. Supp. 2d at 660 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To overcome a Rule 12(b)(6) motion, a complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

In evaluating the sufficiency of the plaintiff's claims, the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court should not grant a motion to dismiss for failure to state a claim unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Priv. Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249–50 (1989)).

## III.    DISCUSSION

A. **Counts I–VI – Fifth Amendment Violations**

Defendants first argue that Plaintiff's claims asserting violations of her Fifth Amendment rights must be dismissed, as the Fifth Amendment applies only to the federal government. ECF No. 14-1 at 5–6; *see Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'"); *Martinez-Rivera v. Sanchez Ramos*, 498 F.3d 3, 8 (1st Cir. 2007) ("The Fifth Amendment Due Process Clause, however, applies 'only to actions of the federal government—not to those of state or local governments.'" (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001)). Plaintiff does not contest this point. *See* ECF No. 15-1 at 8. Accordingly, to the extent Plaintiff brings claims under the Fifth Amendment against Defendants, those claims are dismissed. However, as Plaintiff points out, *see id.*, she also asserts violations of her equal protection and due process rights under the Fourteenth Amendment, which applies against state and local governments, so this argument does not fully dispose of her claims.[4] *See Dusenbery*, 534 U.S. at 167; *cf. United States v. Al-Hamdi*, 356 F.3d 564, 574 (4th Cir. 2004) (finding, where the plaintiff alleged claims against the federal government under the Fourteenth Amendment, that actions of the federal government are reviewed under the Fifth Amendment, but "the standards employed by the Supreme Court in analyzing due process claims under the Fourteenth Amendment apply with equal force to claims raised under the Fifth Amendment").

---

[4] Plaintiff further points to the fact that she brings claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985. *See* ECF No. 15-1 at 8. However, as those statutes are vehicles for the assertion of federal constitutional or statutory violations, they alone cannot support her claims. *See Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017) (citing *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *Hill v. Umpstead*, 639 F. App'x 60, 62 (3d Cir. 2016). She must, as she does here, further assert violations of her federal constitutional or statutory rights.

B.  **Count I – "Class-of-One" Claim**

In Count I, Plaintiff asserts a "class-of-one" claim against Defendants, arguing they "singled her out" for irrational or differential treatment. *See* ECF No. 7 ¶¶ 46–58. "[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quoting *Sioux City Bridge Co. v. Dakota Cty., Neb.*, 260 U.S. 441, 445 (1923)). "Thus, the Supreme Court has recognized the validity of 'class of one' Equal Protection claims, 'where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Willis v. Town of Marshall, N.C.*, 426 F.3d 251, 263 (4th Cir. 2005) (quoting *Olech*, 528 U.S. at 564); *see also Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008) ("[W]e recognized in *Olech* that an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out as a so-called 'class of one.'").

However, in the wake of *Olech*, the Supreme Court cautioned:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Engquist*, 553 U.S. at 603. In keeping with the understanding that some circumstances naturally involve discretionary and variable treatment, the Supreme Court concluded, "the class-of-one theory of equal protection—which presupposes that like individuals should be treated alike, and

8

that to treat them differently is to classify them in a way that must survive at least rationality review—is simply a poor fit in the public employment context." *Id.* at 605; *see also id.* at 606 ("[R]ecognition of a class-of-one theory of equal protection in the public employment context— that is, a claim that the State treated an employee differently from others for a bad reason, or for no reason at all—is simply contrary to the concept of at-will employment.").

According to Plaintiff, "[t]he paramount question for Plaintiff's ['class-of-one' claim] is when does employment end and/or when does the public employment context cease?" ECF No. 15-1 at 9. Plaintiff focuses on the fact that many post-*Engquist* cases involve government action occurring during the period of employment, not, as is the case here, after a plaintiff has retired. *See id.* Plaintiff further emphasizes that she had been retired for 17 years prior to the events at issue. *Id.* at 10. The Court does not find this argument persuasive—where the benefits at issue arise from public employment, the action is still within the "public employment context" regardless of the amount of time that has passed since Plaintiff's retirement.[5]

Given *Engquist*'s clear statement that "class-of-one" claims may not be brought in the public employment context, and because the Court is not aware of any authority carving out an exception to this rule, Plaintiff's "class-of-one" claim is barred. *See Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012) ("Under *Engquist*, the prohibition on class-of-one claims in

---

[5] *Cf. Katzman v. L.A. Cty. Metro. Trans. Auth.*, 72 F. Supp. 3d 1091, 1097, 1107 (N.D. Cal. 2014) (applying *Engquist* to bar a class-of-one equal protection claim by a retired public employee who challenged his employer's suspension of his pension); *Clark v. Milwaukee Cty.*, No. 18-CV-503, 2018 WL 6504371, at *5 (E.D. Wis. Dec. 11, 2018) ("As for Clark's argument that *Engquist* does not bar his class-of-one claim because the defendants' decision to file a report with the National Practitioner Data Bank occurred after his employment relationship ended, Clark cites no authority stating that the timing of the report affects the analysis. BHD's report to the National Practitioner Data Bank still arose out of the 'public employment-like' relationship."); *Scavone v. Pennsylvania State Police*, No. 3:09-CV-1623, 2011 WL 6100621, at *4 (M.D. Pa. Dec. 7, 2011), *aff'd*, 501 F. App'x 179 (3d Cir. 2012) (rejecting argument that the *Engquist* exception does not apply because the plaintiff was never hired); *Babiak v. Nevada ex rel. Dep't of Tax'n*, 554 F. Supp. 2d 1187, 1194 (D. Nev. 2008) ("Plaintiff's status as an applicant for public employment as opposed to a public employee like the *Engquist* plaintiff does not put Plaintiff beyond *Engquist*'s reach.").

the public employment context is categorical."). The Court notes that the provision of retirement benefits is less discretionary than the at-will employment decisions discussed in *Engquist*. However, *Engquist* suggests that even where such statutory schemes exist in the public employment context, such as the Montgomery County Code's provisions regarding retirement benefits, an arbitrary departure from them would not give rise to a "class-of-one" claim. *Engquist* also implies that there are "appropriate forum[s]" for the review of public personnel decisions other than federal courts. *Id.* at 609. Although Plaintiff argues that those administrative grievance processes are no longer available to her as a non-employee, ECF No. 15-1 at 11, the facts alleged prove this incorrect, as Plaintiff sought and obtained relief through her appeal to the Chief Administrative Officer and Merit System Protection Board, ECF No. 7 ¶ 12, pursuant to Montgomery County Code § 33-56(a). Accordingly, *Engquist* applies here and bars Plaintiff's "class-of-one" claim.

### C. Count IV – § 1985 Conspiracy Claim

In Count IV, Plaintiff brings a § 1985 conspiracy claim against Defendant Herman, alleging she jointly conspired with Mr. Goff and Ms. Mireles to violate Plaintiff's constitutional rights. *See* ECF No. 7 ¶¶ 84–93. To establish a claim under 42 U.S.C. § 1985(3), a plaintiff must prove:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

*Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995). Moreover, the plaintiff "must show an agreement or a 'meeting of the minds' by [the] defendants to violate the [plaintiff's] constitutional rights." *Id.* at 1377. The Fourth Circuit has "specifically rejected section 1985

claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Id.*; *see also A Soc'y Without A Name v. Virginia,* 655 F.3d 342, 346 (4th Cir. 2011).

At the motion to dismiss stage, where a conspiracy is alleged, the plaintiff must plead facts amounting to more than "parallel conduct and a bare assertion of conspiracy . . . . Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007). "The factual allegations must plausibly suggest agreement, rather than being merely consistent with agreement." *A Soc'y Without A Name,* 655 F.3d at 344 (citing *Twombly*, 550 U.S. at 557).

First, Plaintiff's conspiracy claim may not be based on her class-of-one claim,[6] as § 1985(3) conspiracy claims require class-based animus. *See Mathis v. McDonough*, No. ELH-13-2597, 2014 WL 3894133, at *26 (D. Md. Aug. 7, 2014) (finding the plaintiff's § 1985(3) conspiracy claim fails because his "'class of one' theory is not based on his membership in any protected class"); *Axt v. City of Fort Wayne*, No. 1:06-CV-157-TS, 2006 WL 3093235, at *4 (N.D. Ind. Oct. 30, 2006) ("A class of one is not a protected class for purposes of § 1985(3)."). Plaintiff must therefore sufficiently allege Defendant Herman participated in a conspiracy motivated by sex discrimination. *See Hodgin v. Jefferson*, 447 F. Supp. 804, 808 (D. Md. 1978) (finding that sex discrimination can qualify as a basis for a § 1985(3) conspiracy); *Williams v. Rappeport*, 699 F. Supp. 501, 505–06 (D. Md. 1988), *aff'd sub nom. Williams v. Dvoskin*, 879 F.2d 863 (4th Cir. 1989) (same). The Complaint does contain a conclusory allegation that Defendant Herman, Mr. Goff, and Ms. Mireles engaged in the conspiracy to discontinue or

---

[6] Additionally, as discussed above, Plaintiff failed to state a "class-of-one" claim. *See* Section III.B.

reduce her benefits based on her sex, ECF No. 7 ¶ 88, and further states that Mr. Goff "was personally aware of a similarly situated Group G male member" receiving benefits that had not suffered consequences when he failed to respond to Defendant County's requests for federal tax returns, *id.* ¶ 89. But these facts alone do not sufficiently tie the alleged conspiracy to sex-based animus or even raise an inference of a "meeting of the minds" to discriminate against Plaintiff on the basis of sex.

Additionally, Plaintiff alleges that she received letters that Defendant Herman directed her subordinates, Mr. Goff and Ms. Mireles, to send. *Id.* ¶ 26–33; ECF No. 7-1 at 12–15. However, these actions while "consistent with agreement," do not, without more, "plausibly suggest agreement." *A Soc'y Without A Name,* 655 F.3d at 344; *Simmons*, 47 F.3d at 1378 ("[T]he law is clear that although an express agreement is not necessary, the 'participants in the conspiracy must share the general conspiratorial objective[.]'" (quoting *Lenard v. Argento*, 699 F.2d 874, 882 (7th Cir. 1983)). To the contrary, the fact that Mr. Goff suggested that Plaintiff obtain legal counsel because she was the only service-connected disabled firefighter whose benefits had been reduced cuts against a finding that he was part of a conspiratorial effort with Defendant Herman to violate Plaintiff's rights. *See* ECF No. 7 ¶ 35. Because Plaintiff fails to allege that Defendant Herman came to an agreement with Mr. Goff or Ms. Mireles to violate Plaintiff's rights, and failed to allege that they were jointly motivated by sex-based animus, Plaintiff fails to state a § 1985(3) conspiracy claim.

**D. Count VI – IIED Claim**

Plaintiff brings an intentional infliction of emotional distress claim against both defendants. ECF No. 7 ¶¶ 107–12. To state a claim for IIED under Maryland law,[7] Plaintiff must

---

[7] As a federal court exercising supplemental jurisdiction, this Court must apply the forum state's choice-of-law rules. *See Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996). For tort claims, Maryland

allege that: "(1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the wrongful conduct and the emotional distress; and (4) that the emotional distress was severe." *Borchers v. Hyrchuk*, 126 Md. App. 10, 18, 727 A.2d 388, 392 (1999) (citing *Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611, 614 (1977)). In Maryland, an IIED claim is "rarely viable," *id.*, and courts have imposed "liability sparingly and . . . limited the tort to situations where the 'wounds are truly severe and incapable of healing themselves,'" *Lee v. Queen Anne's Cty. Off. of Sheriff*, No. RDB-13-672, 2014 WL 476233, at *16 (D. Md. Feb. 5, 2014) (quoting *McDaniel v. Maryland*, No. RDB-10-00189, 2010 WL 3260007, at *9 (D. Md. Aug. 18, 2010)).[8]

Specifically, to adequately plead the second element of an IIED claim, the plaintiff must allege that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Washington v. Maynard*, No. GLR-13-3767, 2016 WL 865359, at *11 (D. Md. Mar. 7, 2016) (citing *Harris*, 380 A.2d at 614). "The conduct must strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 60, 502 A.2d 1057, 1064

---

adheres to the First Restatement of Conflict of Laws rule, *lex loci delicti*, or the law of the place of the harm, to determine the applicable substantive law. *See Naughton v. Bankier*, 114 Md. App. 641, 691 A.2d 712, 716 (1997). Under that rule, the court applies the law of the state "where the injury-the last event required to constitute the tort-occurred." *Lab. Corp. of Am. v. Hood*, 395 Md. 608, 615, 911 A.2d 841, 845 (2006). The events at issue here took place in Maryland. Thus, Maryland law applies to the state causes of action alleged in Counts VI and VII.
[8] Indeed, in the first 30 years after the Maryland "Court of Appeals recognized the tort of IIED, it [] upheld such claims only four times," *Lasater v. Guttmann*, 194 Md. App. 431, 449, 5 A.3d 79, 90 (2010):

> *Faya v. Almaraz*, 329 Md. 435, 620 A.2d 327 (1993) (reversing dismissal when HIV-positive surgeon operated on the appellants without their knowledge of his disease); *Figueiredo–Torres v. Nickel*, 321 Md. 642, 584 A.2d 69 (Md. 1991) (reversing dismissal when plaintiff alleged psychologist engaged in sexual relations with plaintiff's wife during the time he was counseling the couple); *B.N. v. K.K.*, 312 Md. 135, 538 A.2d 1175 (1988) (cause of action for IIED could exist when physician had sex with nurse without informing her he had herpes and infected her with the disease); *Young v. Hartford Accident & Indem. Co.*, 303 Md. 182, 492 A.2d 1270 (1985) (reversing dismissal when workers' compensation insurer insisted that claimant submit to psychiatric evaluation for the "sole purpose" of harassing her and forcing her to drop her claim or commit suicide).

(1986). A temporary reduction in retirement benefits, even if discriminatory, does not rise to the level of outrageous conduct required to sufficiently plead an IIED claim. Therefore, Count VI is dismissed.

### E. Count VII – Conversion Claim

"A 'conversion' is any distinct act of ownership or dominion exerted by one person over the personal property of another in denial of his right or inconsistent with it." *Interstate Ins. Co. v. Logan*, 205 Md. 583, 588–89, 109 A.2d 904, 907 (1954). "Conversion evolved from trover, which occurred where a defendant, a 'finder of lost goods[,] . . . refused to return them' to the plaintiff, the owner of the goods." *Thompson v. UBS Fin. Servs., Inc.*, 443 Md. 47, 56, 115 A.3d 125, 130–31 (2015) (quoting *Lawson v. Commonwealth Land Title Ins. Co.*, 69 Md. App. 476, 480, 518 A.2d 174, 175–76 (1986)) (alteration in *Thompson*). "Originally, because a plaintiff's intangible property could not be lost or found, a defendant could convert only a plaintiff's tangible personal property; now, however, a defendant can convert a plaintiff's intangible property under certain circumstances." *Id.* (internal citation omitted).

Generally, "monies are intangible and, therefore, not subject to a claim for conversion," but "[a]n exception exists . . . when a plaintiff can allege that the defendant converted specific segregated or identifiable funds." *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 564, 731 A.2d 957, 966 (1999). Where the defendant "commingles [the funds] with other monies," however, "the money 'loses its specific identity and may no longer be the subject of a conversion action.'" *Gibbons v. Bank of Am. Corp.*, No. JFM-08-3511, 2012 WL 94569, at *9 (D. Md. Jan. 11, 2012) (quoting *Simmons v. Lennon*, 139 Md. App. 15, 33, 773 A.2d 1064, 1075 (2001)); *see also John B. Parsons Home, LLC v. John B. Parsons Found.*, 217 Md. App. 39, 61, 90 A.3d 534, 547 (2014) ("[W]hen funds are co-mingled, the monies lose their 'separateness' and, therefore, are

not subject to a claim of conversion."). Essentially, courts applying Maryland law have distinguished between claims seeking return of the actual, identical money, and those seeking a specific amount of money. *See, e.g.*, *Hobbs v. St. Martin*, 198 F. Supp. 3d 530, 539 (D. Md. 2016), *order vacated on other grounds sub nom. Hobbs v. Martin*, No. JKB-16-749, 2017 WL 105675 (D. Md. Jan. 11, 2017) ("More fundamentally, Plaintiff's conversion claim fails because he has not alleged that he was entitled to—or had any expectation of—restoration of the *particular funds* that he agreed to lend Hagen." (emphasis original)); *G&D Furniture Holdings, Inc. v. SunTrust Bank*, No. TDC-16-2020, 2016 WL 7441607, at *7 (D. Md. Dec. 22, 2016) (dismissing conversion claim where the plaintiff "asserted the intentional withdrawal of, and failure to return, a specific dollar amount," but not "that the allegedly converted funds were segregated, identifiable, or kept separate in any way"); *Durm v. Am. Honda Fin. Corp.*, No. WDQ-13-0223, 2013 WL 6490309, at *6 (D. Md. Dec. 9, 2013) ("The complaint does not seek the return of the exact funds Durm paid to Honda, but instead seeks damages. . . . Durm basically alleges that . . . Honda owes him a specific amount of money.").

Although Plaintiff alleges the specific amount of funds that was allegedly improperly withheld each month, ECF No. 1-17 ¶ 121,[9] and states that "these funds were specifically identifiable," *id.* ¶ 123, Plaintiff does not allege any facts suggesting that these funds have been held in a segregated account or otherwise held apart. Instead, the Montgomery County Code states that all money and property held for the benefit of those in the retirement system are held in "the Trust" established by § 33-58. Taking the facts as true and drawing inferences in the light most favorable to Plaintiff, it is clear that she is seeking the return of an *amount* of money, rather than the *exact* money withheld. Accordingly, her conversion claim fails.

---

[9] A page of the Complaint containing ¶¶ 119–24 is missing from the versions of the Complaint filed on the docket as ECF No. 1-3 and ECF No. 7, but can be found at ECF No. 1-17 at 61.

Even had her claim survived, it would have nevertheless failed as to Defendant Herman. Plaintiff alleges that "Defendant Herman exercised dominion or control over" the withheld funds, ECF No. 7 ¶ 118, but this conclusory allegation is insufficient. Thus, the fact that the Complaint does not state facts showing that Defendant Herman had any control over the funds provides an additional basis for dismissing Plaintiff's claim against Defendant Herman.[10]

### F. Punitive Damages Against County

Finally, Defendants argue that Defendant County cannot be liable for a claim of punitive damages for any of the claims alleged. ECF No. 14-1 at 12; *see* MD. CODE ANN., CTS. & JUD. PROC., § 5–303(c)(1). Plaintiff acknowledges the restrictions on Defendant County's liability for punitive damages in her Opposition and in the Complaint, but emphasizes that Defendant County may nevertheless "indemnify an employee for a judgment for punitive damages entered against the employee." ECF No. 15-1 at 16 (quoting MD. CODE ANN., CTS. & JUD. PROC., § 5–303(c)(2)(i). Ultimately, as the parties do not disagree about the law, and Plaintiff's Complaint does not request damages prohibited under Maryland law, there is nothing for the Court to decide on this issue at this juncture.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Partial Motion to Dismiss, ECF No. 14, is granted. A separate Order follows.

Date: <u>March   31, 2021</u>                                          /s/_____
                                                                                           GEORGE J. HAZEL
                                                                                           United States District Judge

---

[10] Because the Court dismisses Counts VI and VII, it need not address Defendants' arguments for the dismissal of those claims against Defendant County on the basis of governmental immunity.